HARRY T. DUKE, APPELLANT, *v.* GEORGE C. GRIFFITH, RESPONDENT.

ALTERNATIVE SALE—RIGHTS OF VENDEE—EJECTMENT—COMPENSATION.

1. The defendant leased certain lands of one O., who assigned his rights under the lease to S., and the latter assigned his rights to plaintiff, who brought an action in ejectment. The agreement contained a paragraph in which O. agreed that he would deed a certain part of the land occupied by a reservoir, and give certain easements thereto, or sell the en-

tire piece, 10 acres, for such price as might be put upon it by appraisers appointed under the terms of the contract. *Held*, that the election remained with the lessor or his successors, by assignment, to either the portion occupied by reservoirs, and grant easement thereto, or sell the entire piece, unless estopped by their language or conduct.

2. Where a person may have taken actual possession of land in good faith under an imperfect agreement, or under an erroneous construction of the agreement, or where an attempt is made to take such agreement out of the statute of frauds by showing performance or part performance, the court will retain the bill in a proper case, for the purpose of affording the party a reasonable compensation for beneficial and lasting improvements.

(No. 660.   Decided May 11, 1896.   45 P. R. 276.)

Appeal from the district court of the Fourth judicial district, Territory of Utah.   Hon. W. H. King, *Judge*.

Action of ejectment by Harry T. Duke against George C. Griffith.   Judgment for defendant.   Plaintiff appeals. *Reversed.*

On January 12, 1891, appellant brought action to recover in ejectment the premises described in the complaint.   The appellant claimed title and right of possession and alleged an ouster on the 13th day of August, 1890.   The original answer filed by respondent was a simple denial of appellant's title.   Thereafter an amended answer was filed.   Trial was had resulting in a judgment in favor of appellant, which judgment was reversed in this court on appeal, the case being reported in 9 Utah, p. 469.

The judgment of reversal left all questions arising on this record open to controversy.

After such reversal respondent filed a supplemental answer, and two cross-complaints.   The issues raised by

the amended and supplemental pleading are as follows: First—A denial of the title and of damage. Second—In the first cross-complaint a claim was set up under "An act concerning occupying claimants," for the value of permanent improvements made on the demanded premises under color of title by virtue of a written contract which was attached to the cross-complaint as exhibit "A." In the second cross-complaint there was alleged an oral modification of exhibit "A" made within one year after its execution by virtue of which appellant's grantor, Orth, made an election under exhibit "A" and agreed to convey to respondent the ten acres of ground therein mentioned and placed respondent in possession of said ground in pursuance of said oral modification. Appellant filed answer to these cross-complaints substantially denying all of the allegations thereof, except the execution of exhibit "A." Paragraph four of exhibit "A," containing the important provisions of the agreement which is made the chief question in this case, is set out in full in the opinion of the court.

*Kimball & Kimball* and *Bennett, Marshall & Bradley*, for appellant.

It seems well settled that when the subject matter of a contract is within the statute of frauds and a written contract has been entered into by the parties, no subsequent oral variation will have any other effect than a waiver or abandonment of the written contract, and that it will not of itself be enforced; unless there has been such a part-performance of it as would take it out of the statute of frauds and would cause it to fall under the well settled head of equity jurisdiction to enforce specific performance of oral contracts with respect to lands, when they have been partly performed. *Jordan* v. *Sawk-*

*ins*, 1 Vesey 402; *Cales* v. *Trecothick*, 9 Vesey 250; *Lombard* v. *Chicago Sinai Congregation*, 73 Ill. 271; *Pierce* v. *Dyer*, 17 Vesey 356-364.

Mr. Pomeroy says: "Whenever a court of equity shall exercise its power to decree specific execution where there has been a part performance, the contract itself must be clear, certain and unambiguous in its terms and must either be admitted by the plaintiff or proved with a reasonable degree of certainty to the satisfaction of the court. If therefore upon all the facts given by both parties, the court is left in doubt as to the entire contract or even as to any of its material terms, it will not grant the remedy, although a partial performance of something has been sufficiently proved." Pomeroy's Specific Performance of Contracts, sec. 136.

The only evidence tending to support such a contract is the evidence of the respondent, Griffith. This contract first sees light after the death of Orth. Owing to the particular form of the statutes in our Territory as to parties testifying, Griffith was not technically disqualified from testifying, as this is not an action prosecuted by or against an executor or administrator, nor an heir, devisee or legatee. Orth conveyed in his life time. But the action does not affect a contract claimed to exist between Orth and Griffith. Death has shut the mouth of one party to the contract and according to the general current of legislation in the United States the law would close the mouth of the other, as to matters equally within Orth's knowledge and Griffith's knowledge. 1 Wharton on Evidence, sec. 466.

By an omission in our statute the general policy of the law has not been carried out; but the general policy is a reason why the court should scrutinize the testimony closely and not defeat an estate on testimony that is self-contradictory and unsatisfactory.

There is another reason why a very strong presumption arises against such an oral contract—a presumption not to be overcome, except by the clearest and most conclusive testimony. It is that Orth's subsequent sale to Stein must have been intended either as a fraud on Stein or as a fraud on the respondent, if in truth there was this oral contract.

"Fraud or breach of trust ought not lightly to be imputed to the living, for the legal presumption is the other way. As to the dead who are not here to answer for themselves it would be the highest injustice and cruelty to disturb their ashes and violate the sanctity of the grave, unless the evidence of fraud be clear beyond a reasonable doubt." *Prevost* v. *Gratz*, 6 Wheaton 498.

*E. T. Hulaniski* and *Maginnis & Weber*, for respondent.

If the contract be in the alternative as to do a thing on one day or another, or in one way or another, the right of election is with the promisor, *if there be nothing in the contract to control the presumption. Smith* v. *Sanborn*, 11 Johns. 59. It is an ancient rule that in case an election be given of two several things, always he that is the first agent and which ought to do the first act shall have the election. *Norton* v. *Webb*, 36 Me. 270. But this same rule may give the election to the promisee if something must be first done by him to create the alternative. *Chippendale* v. *Thurston*, 4 C. P. 98; Parson's Contracts, 163 to 170.

If I give unto you one of my horses in my stable, there you shall have the election, for you shall be the first agent by taking or seizing one of them. In case an election be given of two several things, always he which is the first agent and which ought to do the first act shall have the election. Co. Litt. 145; *Moyer* v. *Dwinell*, 29 Vt. 298; *Smith* v. *Sanborn*, 11 Johns. 59; *Disbrough* v. *Nielson*, 3

Johns. Cases 81; *Choice* v. *Mosely*, 1 Bailey 136; *Chippen-dale* v. *Thurston*, 4 Car. & P. 98; *Layton* v. *Pierce*, 1 Doug. 15; *Denvill* v. *Burnell*, Law Rep. 8 C. P. 475, 480; Bishop on Contracts, sec. 785.

A lease *habendum* for 7, 14 or 21 years is determinable at either of those periods at the election only of the lessee and not of the lessor. The words of a grant when doubtful are to be construed in favor of the grantee.

In this case Griffith had the first act to perform, *i. e.*, to tender the purchase price.

Possession of land puts a purchaser or creditor on inquiry as to the title of such person. *Toland* v. *Corey*, 6 Utah 392, 24 Pac. 190; *Duke* v. *Griffith*, 9 Utah 469, 35 Pac. 512; *Stahn* v. *Hall*, 10 Utah 400, 37 Pac. 585; *Nepon-set Land and Live Stock Co.* v. *Dixon*, 10 Utah 334, 37 Pac. 573.

Legal or implied notice is the same in effect as constructive notice. *Williamson* v. *Brown*, 15 N. Y. 359.

It is not necessary that the possession should have all the characteristics of an adverse possession. *Smith* v. *Heirs of Jackson*, 29 Ill. 254; Warville Venders, vol. 1, p. 278.

Possession of part is notice as to claim to the whole. *Mollette et al.* v. *Koehler*, (Ill. 1892) 30 N. E. Rep. 549; *Wickes* v. *Lake*, 25 Wis. 71; II Derlin Deeds, sec. 769, p. 45; *Krider* v. *Lafferty*, 1 Whart. 303.

It is not strictly accurate to say that the subject matter must be absolutely certain from the writing itself or by reference to some other writing; the true rule is that the situation of the parties and the surrounding circumstances when the contract was made can be shown by oral evidence, so that the court may be placed in the position of the parties themselves, and if then the subject matter is identified and the terms appear reasonably certain, it is enough. Pomeroy on Contracts, p. 227, note;

*Easton* v. *Thatcher*, 7 Utah 99, 25 Pac. 728; *Towle* v. *Carmelo Land and Coal Co.* (Cal.) 33 Pac. 1126; *Mead* v. *Parker*, 115 Mass. 413; *Preble* v. *Abrahams*, 88 Cal. 245, 26 Pac. 99; *Fish* v. *Hubbard, Admrs.*, 21 Wend. 652; 2 Parson's Cont., 61, 62.

ZANE, C. J.:

This is an appeal by the plaintiff from a decree of the district court against him. The plaintiff commenced his action of ejectment against the defendant, to recover 4½ acres of land described in his complaint. The defendant answered, denying all the allegations except possession. A cross complaint was also filed by defendant, in which he set up an agreement containing an option with respect to the conveyance of 2½ acres of land, and 10 acres, upon which he alleged an election had been made, entitling him to a conveyance of the 10 acres upon certain conditions, which he averred had been performed on his part. Of this 10 acres, defendant asked the court to grant him a conveyance. On the trial of the cause, the court below admitted in evidence an agreement in writing between E. H. Orth and the defendant, bearing date October 9, 1884. The first paragraph provided for the construction of reservoirs on about two acres of Orth's land. The second paragraph granted the free use of the reservoir land, and a right of way, for 10 years. The third related to water. The defendant bases his claim upon the fourth paragraph, and the evidence which he claims proves an election by Orth, and performance by himself. It is as follows: "Said E. H. Orth hereby agrees that he will, at the end of said term of ten years, either give to said George C. Griffith, for the sum of $1, a deed for the land occupied by said reservoirs and banks, and fifty feet wide along the west side of said revervoir, also the right of way from said Griffith's land to said reservoir, or that he

will sell to said Griffith a plat of land, ten acres in extent, to include said reservoirs, at one-half the appraised value of said land, in an unimproved condition; the appraisers to be chosen, one by each party hereto, and they to choose a third or umpire." In other words, at the end of 10 years, Orth agrees to give defendant a deed to the land occupied by the reservoir, and 50 feet of ground along the west side of it, and a right of way from the reservoir to Griffith's land, for one dollar, or to deed him ten acres of ground, including the reservoir, for one-half its appraised value in an unimproved condition. The plaintiff insists that the right to elect was with Orth, while the defendant claims it was with him. Orth agreed to do one of two things at the end of the term, viz., to make a deed to the reservoir and a strip of land and right of way, or a deed to the 10 acres. He did not say which he would convey. His agreement went no further than to do one or the other at the end of the term. He did not agree to convey the one Griffith might elect to take. He did not agree to convey the 2½-acre lot if Griffith might select that, or the 10-acre lot if he should select that. Orth did agree that he would convey the one or the other, and that he would determine at the end of his term which one.

When a person promises or agrees to deliver certain property, or pay a sum of money on or before a time named, the option is with the person agreeing to deliver or pay the money. In 2 Pars. Cont. (7th Ed.) p. 652, the rule is stated: "If the promise be to pay money at a certain time, or deliver certain chattels, it is a promise in the alternative, and the alternative belongs to the promisor. He may do either the one or the other, at his election; nor need he make his election until the time when the promise is to be performed; but after that day has passed without election on his part, the promisee

has an absolute right to the money, and may bring his action for it." To the same effect are the following cases: *Smith* v. *Sanborn,* 11 Johns. 59; *Marlor* v. *Railroad Co.,* 21 Fed. 383; *McNitt* v. *Clark,* 7 Johns. 465; *Mayer* v. *Dwinell,* 29 Vt. 298.

The defendant refers us to 3 Bac. Abr. 309, where this language is used: "It is laid down as a general rule that, in case an election is given of two several things, he who is the first agent, and ought to do the first thing, shall have the election." By the fourth paragraph under consideration, Orth, the owner of the land, was to make the deed. That was the first act. The same rule is stated in 1 Co. Litt. (Butler & Hargrave's Notes) p. 145*a,* § 219.

It appears from the evidence in the record that Orth conveyed a tract of land, including both of those in dispute, to Nathan Stein, on the 10th day of October, 1885; and that Stein conveyed the same land to Harry T. Duke, the plaintiff, on the 27th day of August, 1889; and that Duke and wife tendered a deed of conveyance in due form, and properly acknowledged, of the reservoir, and the land on which it was built, and a strip of land 50 feet wide along the west side of it, and the right of way from the reservoir to defendant's land, according to the fourth paragraph of the agreement above mentioned, on the 8th day of October, 1894. In view of the above conveyances, we are of the opinion that Duke had the right to elect to convey to defendant the reservoir, strip of land, and right of way on the day of the tender, unless it appears that Orth elected to deed to defendant the 10 acres, and put him in possession of it, as alleged in his cross-complaint, or the plaintiff, Duke, is estopped by his own conduct, or by the

conduct of his grantor, Stein, or the language or conduct of Orth.

With respect to the election by Orth, the defendant testified, as it appears from the record, that Orth said to him in 1884 that he would see that he got the 10 acres in conformity with the contract, if the defendant would assume to pay certain obligations mentioned; and he further testified that he did assume to pay them. At another time, defendant said Orth asked him why he did not build upon the 10 acres. Defendant's wife also testified to this last conversation, which they testified occurred at defendant's house, in December, 1884, or January, 1885. The defendant testified that one Steele was present at the time when Orth said he was to have possession, but, from Steele's testimony, he may have referred to the reservoir ground, that being a part of the 10 acres. It appears that Stein sued the defendant, Griffith, on November 3, 1887, for the rent of the 10-acre tract, including the land on which the reservoir stood, and that on the trial of this case, defendant was called as a witness, and was asked by the plaintiff if he did not testify on the trial of the case brought by Stein "that he was not in the possession of, and made no claim to, and had not occupied any part or any more of the 10 acres mentioned in the contract than that covered by the reservoir and ice-house." And he answered "Yes;" that he did. To this answer he gave a very unsatisfactory explanation when his attention was called to it by his attorney. Mr. L. M. Rogers was Stein's attorney on that trial, and he was asked on the trial of this cause as to defendant's testimony on the former case; and, after refreshing his memory, he said: "My best recollection is that Mr. Griffith claimed to be in possession of all of that portion of the land for which rent money was being asked in that

action, which was occupied by the reservoir sites and by the ice-houses." Stein commenced his action by filing a complaint, in which he claimed rent due him from the defendant for the use and occupation of the 10 acres of land in dispute.

The defendant filed an answer thereto, in which he stated as follows: "The defendant, for a further answer, says that on or about the 9th day of October, 1884, he went into possession, and has ever since been, and now is, in possession, of about two acres, a portion of the land described in said complaint, being that portion occupied by and covered by reservoirs constructed thereon, and the buildings used in connection therewith, and the right of way leading thereto, under and by vir-tue of a license and lease from E. H. Orth, the owner thereof, for so much of said premises as should be occupied by said reservoirs; and the right of way leading thereto, and by virtue of a contract of sale, and purchase between the defendant and E. H. Orth, which said license, lease, or contract was to continue and be in force for a period of ten years from the date thereof, towit, October 9th, 1884, which period has not yet elapsed." At the time the above answer was filed, and defendant's testimony given under it as above, Orth was alive, but he died before this suit was insti-tuted. The testimony of the defendant as to statements favorable to him which he alleges were made by the deceased, Orth, should be critically examined and weighed, especially when those statements put the deceased in the position of having perpetrated a fraud on Stein, by deeding the 10 acres to him without disclos-ing the fact that he had elected, for a consideration, to deed the same land to defendant. The testimony as to the election by Orth to deed the 10-acre tract is very con-flicting, and, as we think, unreliable. It does not appear

that the defendant was induced by any representations of the plaintiff or his grantor or Orth, upon which he had a right to rely, to make the improvements upon the land in dispute in this cause, or that either of them concealed any fact, or that they remained silent, when they were bound by the rules of equity to disclose their rights.

In the light of the evidence, we are of the opinion that the defendant is not estopped from asserting his legal right to the land described in his complaint; and we are of the opinion that the evidence in the record did not authorize the first, third, and fourth findings of fact as therein stated, and that the court below erred in the statement of its conclusions of law, and in the decree upon such findings of fact and conclusions of law.

But the defendant, in his cross complaint, claimed compensation for improvements made by him on the land in dispute, in case the court should deny his prayer for specific performance, and should hold that the plaintiff had a good title to the land described in his complaint, both at law and in equity. In his cross complaint, he described the improvements which he alleges he made, and avers that he made them in good faith, under the belief that he would be entitled to a valid deed to the land at the expiration of the 10 years mentioned in the contract in evidence, between Orth and himself. Good faith entitles the possessor of land to great favor as to compensation for valuable improvements made by him. Though a person may have taken actual possession of land in good faith under an imperfect agreement, or under an erroneous construction of the agreement, or where an attempt is made to take such agreement out of the statute of frauds by performance or part performance, and the court will not grant specific performance, the court will retain the bill in a proper case, for the purpose of affording the party a reasonable compensation

for beneficial and lasting improvements. *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. 273; 10 Am. & Eng. Enc. Law, 343.

Though we will not decide the issue as to defendant's claim of compensation for improvements, because no account appears in the record as to the rents and profits or as to improvements, we are of the opinion that the court below should allow the parties to amend their pleadings, if necessary, and to determine these questions, on any competent, relevant, and material evidence offered, whether it may have been taken on the former hearing, or whether it be new evidence.

The judgment appealed from is reversed, and the case is remanded, with directions to the court below to set aside the decree, the findings of fact, and the conclusions of law, and to try the issues in ejectment, calling a jury if demanded by either party; and the court below is directed to retain the defendant's cross complaint if requested by him, and to allow the pleadings to be amended as to rents and profits of the land described in the plaintiff's complaint if deemed necessary, and as to improvements made by defendant on the same, and to hear such legitimate evidence as may be offered, whether it be new or preserved from the former trial, if the court shall be of opinion that rents and profits of the land should be allowed to plaintiff, and to find the amount, and if the court shall be of the opinion, and find that compensation should be allowed to defendant for improvements on the land in question, to find the amount and to allow them to the extent that the same enhanced the value of the land; in other words, to state the account as to rents and profits, and for improvements made by defendant.

BARTCH, J., and JOHNSON, District Judge, concur.