SCHNEIDER, Respondent, vs. REED and others, imp., Appellants.

*November 17, 1904—January 10, 1905.*

*Appeal and error: Party aggrieved: Mortgages: Foreclosure: Findings: Pleading: Cross-complaint: Waiver: Contracts: Uncertainty as to purchase price: Specific performance: Equity: Vendor and purchaser: Equitable lien: Judgment on foreclosure: Provisions.*

1. In an action to foreclose a mortgage, a defendant, who had before the commencement of the action conveyed his entire interest in the lands in question to his codefendant, and against whom no personal judgment is rendered, is not aggrieved in any way by the judgment, and under sec. 3048, Stats. 1898 (limiting the right of appeal to a party aggrieved), is not entitled to appeal from the judgment.

2. When lands are conveyed as mere security for a loan, the grantor having no interest in the premises at the time except a bare possession, the transaction is nevertheless a mortgage.

3. In an action to foreclose a mortgage, where, on an issue raised by one who has rights other than as mere mortgagee, all the interested parties being before the court, the court finds that a defendant has some interest in the premises, or claim thereon, which the court can recognize, the court should proceed to determine what that interest is, and by what means it is to be protected in the action.

4. The orderly way of presenting a controversy between defendants is by way of answer containing the essential allegations of a cross-complaint as provided in sec. 2883, Stats. 1898. While it is better pleading to denominate such part of the answer a "cross-complaint," in analogy to the requirements in case of a counterclaim, failure to so denominate the allegations of the answer is effectually waived by voluntarily answering the same.

5. Where the only arrangement as to the price of lands was that the purchaser should pay what the land was worth, and that if the parties could not agree, the price was to be settled by arbitration, one essential of the contract is left wholly uncertain, and it will not be specifically enforced.

6. An agreement to arbitrate will not be specifically enforced.

7. Where a purchaser goes into possession of lands, and, in good faith, makes extensive improvements under an unenforcible

arrangement with the vendor, and the vendor refuses to complete the agreement, the purchaser is entitled, in equity, to compensation for the amount which his improvements have added to the value of the land, less the rents and profits properly chargeable against him while in possession.

8. In such case, it should be determined how much the improvements have enhanced the value of the land, and the reasonable rental value, irrespective of buildings during the vendee's possession, and the balance, in favor of the vendee, if any, adjudged an equitable lien on the premises.

9. In such case, the vendor should be allowed to redeem from such equitable lien, by payment of the amount thereof within a reasonable time, to be fixed by the judgment, with interest from the date of the judgment, but with no deduction for rents and profits accruing after the entry of the judgment.

10. In such a case, where the issue was raised in an action to foreclose a mortgage lien existing on the premises prior to such purchase, the judgment of foreclosure should provide that, in case it becomes necessary to sell the purchased parcel, the same should be sold free from such lien, the equitable lien to be a lien on the surplus, if any, arising from the sale, which surplus should be brought into court for disposition by its order.

11. Where one of two co-mortgagees is a defendant, the judgment of foreclosure and sale should provide that the sale may be moved by either.

12. Where a purchaser of land under an unenforcible agreement in good faith makes valuable improvements, and thereby acquires an equitable lien, such land being subject to a prior mortgage, and in an action to foreclose such mortgage, issues raised between such purchaser and the owner of the equity of redemption are adjudicated, whereby the amount of such equitable lien is fixed, the judgment of foreclosure should provide for some short period within which such equitable lien may be redeemed, and, in case of failure to redeem, or on failure to cause a foreclosure sale within such period, that the owner of the equitable lien may bring an action for strict foreclosure of such lien, subject, however, to the prior mortgage lien.

13. Previous to a loan, the mortgagors agreed that S., one of them, should have a one-third interest on paying his co-mortgagor a certain sum out of the sales of the land. In an action to foreclose such mortgage, it appeared, among other things, that the co-mortgagor conveyed his interest to K., and that S. had never paid such sum. *Held*, that the judgment of foreclosure should definitely declare the title to the equity of redemption to be

in K. as to two thirds and in S. as to one third, in undivided shares, and impose a lien for such sum upon S.'s one third in favor of K., to be paid out of the first sales of the land after the mortgage is discharged, and also provide for the working. out of such lien by appropriate directions.

APPEAL from a judgment of the circuit court for Winnebago county: GEORGE W. BURNELL, Circuit Judge. *Reversed.*

This is an action to foreclose as real-estate mortgages two instruments which upon their face are absolute deeds of real estate. Before stating the questions principally discussed on this appeal, it will be useful to state certain leading and undisputed facts. It appears that the premises in question consist of a considerable number of acres of land in Winnebago county, Wisconsin, which were originally owned either by Lydia Reed or by Curtis Reed, her husband, and were possessed by them until their deaths, which took place, respectively, in February, 1893, and March, 1895. After the death of Curtis Reed, his sons, the defendants, *W. W. Reed* and *Charles Reed,* continued in possession of the premises, claiming ownership thereof, until December 6, 1898, at which time the legal title as to a part of the premises had vested in Ole Oleson, as trustee of the estate of one Sanford, by virtue of a deed on foreclosure of a mortgage given by the Reeds, dated April 19, 1878; as to another part the title was in Ole Oleson by virtue of a tax deed thereon; and as to another part in the Menasha Wooden Ware Company by virtue of tax deeds. That prior to December 6, 1898, *W. W. Reed* and *Charles Reed* desired to raise $3,000 to redeem the property, and made an oral arrangement with the defendant Joseph Schneider to assist them in raising the money, the said Joseph Schneider to pay one third of the loan and to have one-third interest in the land. The *Reeds* testify that it was also agreed that he was to pay them $2,000 out of his share of sales of the land before he became entitled to any interest therein, but:

this is denied by Joseph Schneider. That thereupon another oral arrangement was made by the *Reeds* and Joseph Schneider with the plaintiff, *John Schneider,* and one William M. Gilbert, whereby the last-named parties were to loan to the *Reeds* and Joseph Schneider $3,000 to pay off the claims of Oleson and the Wooden Ware Company, and were to receive a deed of the lands as security for said loan, the *Reeds* and Schneider agreeing to pay the loan on or before three years from that date with interest at six per cent., together with all taxes on the land, and upon such payment to receive a deed of the premises. That this arrangement was carried out, the money being advanced and deeds being made to *John Schneider* and Gilbert, the former furnishing $2,250 and the latter $750 of the consideration. That *John Schneider* thereafter paid taxes on the land, and that there was due him at the time of the entry of judgment in this action in all $3,338.04. That Gilbert paid no taxes. That on December 8, 1900, Gilbert quitclaimed his interests in the land to the defendant *Kerwin,* who had full knowledge of the facts previously stated. That in the spring of 1899 the defendant corporation the Brighton Beach Company was organized by the *Reeds,* Joseph Schneider, and *John Schneider,* and that said corporation went into possession of a part of the land under an oral agreement with the *Reeds* and Joseph Schneider to purchase the same at a price thereafter to be agreed upon, and erected expensive buildings on the same, and are still in possession thereof. That the defendant Frank Engels is the owner of a judgment amounting to more than $8,000, obtained against the Brighton Beach Company by him November 9, 1901, and claims that such judgment is a lien upon any rights of the Brighton Beach Company in the premises. That on December 8, 1900, the defendants *W. W.* and *Charles Reed* quitclaimed their interest in the entire tract, to the defendant *Kerwin.*

The defendants *W. W.* and *Charles Reed* answered, im

-effect denying that the transaction constituted a mortgage, and claiming that the premises were owned by the plaintiff and the defendant *Kerwin* in equal shares, and alleging that the defendants Joseph Schneider, the Brighton Beach Company, and Engels have no interest in the land. The defendant *Kerwin* answered, admitting the execution of the deeds to *John Schneider* and Gilbert, and alleging that the same -constituted a purchase of the land, and conveyed absolute title, and that the alleged agreement to convey the same to the *Reeds* and Joseph Schneider, as well as the alleged agreement by the *Reeds* to convey an interest therein to Joseph Schneider, were void; that he purchased Gilbert's one-half interest, and now owns the same in fee, and that neither the Brighton Beach Company nor Engels has any interest in or lien on said land. By way of cross-complaint he claimed to recover against the *Schneiders* for waste committed on the premises, and for rents and profits received by them after his purchase, and he prayed judgment dismissing the complaint, as well as for an accounting with the *Schneiders,* that the court determine as to whether the defendants Joseph Schneider, Brighton Beach Company, and Engels, have any right or interest in the premises, that they be barred of all rights or interest therein, and that his title be established against them, and for further equitable relief. The court ordered the answers of *Kerwin* and the *Reeds* to be served upon the Brighton Beach Company, Joseph Schneider, and Engels, and gave said last-named defendants twenty days to answer the same. The Brighton Beach Company answered the cross--complaint of *Kerwin,* setting forth the original contract made by the *Reeds* and Joseph Schneider with *John Schneider* and Gilbert, the alleged second contract made by them with the *Reeds* and Joseph Schneider, their possession of the premises and improvements thereon to the extent of $10,000, and claimed an interest in the premises, and demanded that

their interest be protected. *John Schneider* also answered. the cross-complaint, reiterating the allegations of the complaint substantially, and denying the allegations of *Kerwin's* answer. Engels answered the cross-complaint, claiming a lien upon the interest of the Brighton Beach Company by virtue of his judgment. Joseph Schneider also answered the cross-complaint.

The action was tried by the court, and findings were made to the effect that the transactions between the *Reeds* and Joseph Schneider on one side and *John Schneider* and Gilbert on the other constituted a mortgage; that the agreement was that Joseph Schneider was to have one-third interest in the land after the mortgage was paid, he also to pay to the *Reeds* out of any sales of the land, if sufficient, for that purpose, $2,000; that *Kerwin* had purchased Gilbert's interest; that the Brighton Beach Company had a valuable interest of an equitable nature in the parcel of land upon which they had built their buildings, but that the character and degree of that interest it was unnecessary to determine, and hence it was left undetermined in this action; that the judgment of Engels was a lien upon that interest, but on no other part of the property; that notice of pendency of the action was duly filed; that no part of the premises consisted of a homestead, and that the same could be sold in parcels. The court also determined the amount due *John Schneider* and *Kerwin,* respectively, upon their mortgage, and directed the usual judgment of foreclosure sale of the premises in seven parcels. No personal liability was found against any of the defendants. Judgment being rendered in accordance with these findings, the defendants *Kerwin, W. W. Reed,* and *Charles Reed* appeal.

*J. C. Kerwin,* for the appellants.

For the respondent there was a brief by *Henry Fitzgibbon,* and *Thompsons, Reed & Pinkerton,* and oral argument by *A. E. Thompson.*

The following opinion was filed December 13, 1904:

WINSLOW, J.    The appeal of the *Reeds* must be dismissed. It stands admitted that before the commencement of this action they deeded to the appellant *Kerwin* their entire interest in the lands in question.    No personal judgment of any kind is rendered against them; hence it is apparent that they have no interest in the litigation, and are not aggrieved in any way by the judgment, and hence are not entitled to appeal therefrom.    Sec. 3048, Stats. 1898.    The appeal of the defendant *Kerwin,* however, raises some serious questions. His first contention is that the deeds to *John Schneider* and Gilbert cannot be held to constitute a mortgage, because the *Reeds* and Joseph Schneider had no interest in the premises at the time except a bare possession, and hence had nothing which they could mortgage.    This contention is satisfactorily answered by the holding in the case of *Schriber v. Le Clair,* 66 Wis. 579, 29 N. W. 570, 889, where the defendant had absolutely no interest in the lands deeded, and was not even in possession thereof; yet, it appearing that the lands were conveyed to the plaintiff as mere security for a loan to the defendant, the transaction was held to be a mortgage.    Further citation of authority on this point is unnecessary.

The most important contention, however, relates to the question of the claims of the defendants the Brighton Beach Company and Engels.    As stated in the statement of facts, the Brighton Beach Company made an oral agreement with the *Reeds* and Joseph Schneider to purchase a certain part of the property (but agreed upon no price), and thereafter erected an expensive building thereon, and afterwards a large judgment was obtained and docketed against the Brighton Beach Company by Engels, and the claim is that the Brighton Beach Company had an equitable interest in the parcel on which they built, and that the judgment of Engels

is a lien upon that interest. The court found that the Brighton Beach Company had an equitable and valuable interest in the parcel on which they built, the character and degree of which was not determined because such determination was unnecessary, and that Engels claimed a lien upon that interest. The appellant *Kerwin* claims that it was error to hold that the Brighton Beach Company had any interest in the lands, and that, if it had any interest, it was error not to determine what that interest was with certainty. Taking up these questions in inverse order, it seems to us that if, in fact, the Brighton Beach Company had any interest in the premises, or claim thereon, which a court could recognize, the court should have determined what that interest was, and by what means it was to be protected in this action. Had *Mr. Kerwin's* rights been simply those of a mortgagee, it seems probable that no such determination would have been necessary, so far as his rights were concerned. All that he could reasonably claim as mortgagee would be a judgment of foreclosure and sale, and a determination of the question as to who was entitled to redeem before sale, and these rights are sufficiently secured by the judgment actually entered. But he was not a mere mortgagee. He had acquired, by purchase before the foreclosure action, title to the interest of the *Reeds,* which on any theory amounted to at least a two-thirds interest in the equity of redemption. So in regard to this two-thirds interest he stood in the double relation of mortgagee and owner of the equity of redemption. As such owner the question whether the Brighton Beach Company and Engels had interests in any part of the premises which could in any way be a burden upon his title acquired from the *Reeds* was manifestly of considerable importance, especially in case of a surplus upon the foreclosure sale, or in case the mortgage was discharged by the sale of a part of the property. "Equity delights in doing justice, and that not by halves." All the parties interested in the question were be-

fore the court, and as the interest of the Brighton Beach
Company, if any, was purely equitable, there would seem to
be great force in the claim that it should be settled in the
present action.   In reply to this, however, the claim is made
that such a contest between defendants could only be prop-
erly considered and decided upon a cross-complaint and that
there is no cross-complaint covering this contention in the
answer.   It may be readily conceded that the most orderly
way of presenting such a controversy between defendants
is by way of answer containing the essential allegations
of a cross-complaint, as fully elucidated in the case of
*Kollock v. Scribner,* 98 Wis. 104, 73 N. W. 776, and after-
wards specifically recognized by the statute in sec. 2883,
Stats. 1898.   It may also be conceded that, inasmuch as
the statute now uses the term "cross-complaint" in refer-
ring to such an answer, it would be better pleading to so de-
nominate that part of the answer containing the supposed
cross-complaint in analogy to the requirements in case of a
counterclaim.   That course was not followed in the present
case, but it by no means necessarily follows that the issues
were not fairly before the court.   *Mr. Kerwin's* answer,
while not denominated a cross-complaint, really contains the
essential averments of such a pleading.   It admits the exe-
cution of the deeds to *John Schneider* and Gilbert, alleges
that the oral agreement to convey to the *Reeds* and Joseph
Schneider was null and void, sets forth his own purchase of
the rights of the *Reeds* and the undivided one half owned by
Gilbert, and his consequent ownership of at least one half
of the land; alleges that neither the Brighton Beach Com-
pany nor Engels has any right or interest in the land, al-
though Engels claims that his said judgment is a lien upon
the lands; and asks affirmatively that the claims of said last-
named defendants be determined, that his title be established
against such claims, and that said defendants be forever
barred of all rights in said land.   This answer, by order of

Schneider v. Reed, 123 Wis. 488.

court, was served upon the Brighton Beach Company and Engels, and they each made answer thereto, in which they each referred to *Mr. Kerwin's* answer as a cross-bill, and each claimed an interest in the mortgaged premises.

Under this state of the pleadings we cannot doubt that the issue as to the nature and extent of the claims of the defendants in question was fairly before the court, and that, if there was any substantial defect arising from the failure to properly label the allegations of the answer as a cross-complaint, it was effectually waived by the fact that the defendants voluntarily answered the same as though the allegations had been properly named. *Voechting v. Grau,* 55 Wis. 312, 13 N. W. 230. So we must not only regard the question as a proper one to be raised and litigated in this action in order that a complete determination of all conflicting claims be reached in one action, but also as in fact properly raised by the pleadings actually filed. Such being our conclusion, the question as to the extent and nature of the interest, if any, must be considered. The Brighton Beach Company took possession, and made their improvements, under an oral arrangement for purchase made with the *Reeds* and Joseph Schneider, who owned the equity of redemption in the premises. Had this oral agreement been sufficiently definite in its terms, it could doubtless have been specifically enforced in equity. But the difficulty is that no price for the land was agreed upon. Under the most favorable construction of the evidence it appears that the only arrangement as to price was that the company would pay what the land was worth, and that, if the parties could not agree, the price was to be settled by arbitration. Thus one of the essential elements of the contract was left wholly uncertain, and it will not be enforced. *Eckel v. Bostwick,* 88 Wis. 493, 60 N. W. 784. An agreement to arbitrate will not be specifically enforced. *Hopkins v. Gilman,* 22 Wis. 476.

Thus it is plain that the Brighton Beach Company had no

interest in the title of the tract, and no right to compel a conveyance thereof under any circumstances; but it by no means follows from this that, as between them and the owners of the equity of redemption, they had no claim which a court of equity would recognize and preserve, subject, of course, to the prior claim of the mortgage. Eliminating, for the moment, the paramount mortgage interest, the question is whether the company had any equitable rights as against the owners of the equity of redemption. They were not trespassers, but went into possession, and in good faith made extensive improvements under an unenforceable arrangement with the owners of such equity, of which arrangement *Mr. Kerwin* had notice, by the fact of their possession, when he obtained his title. Had ejectment been brought against the company, there could have been no allowance for improvements under the betterment statute, because that statute limits the allowance for improvements to a party in possession who holds adversely in good faith under color of title founded on descent or some written instrument. Sec. 3096, Stats. 1898. But the fact that a court of law, in a purely legal action governed by statutory provisions, may be unable to grant relief, by no means sets bounds to the beneficial powers of a court of equity, especially when the opposing party has himself entered that court, and asked for its decree cutting off the alleged equitable claims. If no relief could be given in the present case to the maker of the improvements, then it would follow that whenever the owner of land succeeded in inducing a third party to enter upon land under an invalid contract of sale, and to make valuable improvements thereon in good faith, he could refuse to carry out the arrangement, and recover his land, with the improvements, without rendering any compensation therefor. We do not find that we are compelled to lay down any such harsh and unjust rule. Mr. Waterman, in his work on Specific Performance, at sec. 281, states the rule thus:

"If the contract is such that it will not be enforced, the vendor will be compelled to refund the purchase money and pay for the improvements of the vendee, deducting therefrom the rents and profits."

It may, perhaps, be doubted whether this proposition is not stated too broadly, but it may confidently be said that the authorities generally hold that, where a purchaser of land, without fault on his part, has in good faith made permanent and valuable improvements thereon, and is unable to compel specific performance of his supposed contract because it is not in writing, and the vendor refuses to complete the same, the purchaser is entitled in equity to compensation for the amount which his improvements have added to the value of the land, less the rents and profits properly chargeable against him while in possession. 16 Am. & Eng. Ency. of Law, 96, 97, tit. IMPROVEMENTS; *Parkhurst v. Van Cortlandt,* 1 Johns. Ch. 273; *Rhea v. Allison,* 3 Head, 176; *Thouvenin v. Lea,* 26 Tex. 612; *Duke v. Griffith,* 13 Utah, 361, 45 Pac. 276; *Bender's Adm'rs v. Bender,* 37 Pa. St. 419; *Winton v. Fort,* 5 Jones Eq. 251; *Chabot v. Winter P. Co.* 34 Fla. 258, 15 South. 756; *S. C.* with note, 43 Am. St. Rep. 192. This principle should be applied in the present case. Testimony should be taken on the question as to how much the hotel built by the Brighton Beach Company has enhanced the value of the parcel which their oral agreement to purchase covered, and also upon the question as to the reasonable rental value of that parcel irrespective of buildings during their possession, and the balance in favor of the company, if any, should be adjudged to be an equitable lien upon the parcel, subject to the mortgage, and the lien of the Engels judgment, when docketed, should be held to attach thereto. The owners of the equity of redemption should be allowed the right, if they choose, to redeem from such equitable lien by payment of the amount thereof, with interest from the date of the judgment within a reasonable time, to be fixed

by the judgment, with no deduction for rents and profits accruing after the entry of judgment, in analogy to the statutory provisions as to the payment by the plaintiff of the amount allowed for improvements in an ejectment action. Sec. 3098, Stats. 1898. The period allowed by the last-named section is three years, but it is deemed that eighteen months would be the proper period in the present case.

It was rightly held by the trial court that, if foreclosure sale should be necessary, the premises should be sold in parcels, the parcel deeded to the defendant the Fox River Valley Electric Railroad Company being sold last, because it was first conveyed, and the parcel possessed by the Brighton Beach Company being sold next to the last. It should further be provided by the judgment that, in case it becomes necessary to sell the Brighton Beach parcel for the reason that the previously sold parcels have not produced enough to discharge the mortgage, the same should be sold free from the lien, and that the only equity then remaining to either the Brighton Beach Company or Engels should be a lien upon the surplus, if any, arising from the sale of that parcel, which surplus should be brought into court for disposal by order of court. The judgment should also provide that the mortgage foreclosure sale may be moved by either the plaintiff, *John Schneider,* or the defendant *Kerwin,* to the end that there be no delay in such sale at the close of the mortgage redemption period of one year, and that the sale may take place before the expiration of the eighteen months allowed for redemption from the equitable lien of the Brighton Beach Company. It should also be provided that, in case of failure to redeem from the latter lien within the eighteen-months period, and failure for any reason to cause a foreclosure sale of the tract within that period, the Brighton Beach Company and Engels be permitted to bring an action for strict foreclosure of such lien, subject to the mortgage lien, if such lien still exists.

The only remaining assignment of error which is considered of sufficient importance to be noticed is that relating to the interest of the defendant Joseph Schneider. The court having found that the original transaction was, in legal effect, a mortgage between the *Reeds* and Joseph Schneider as mortgagors and *John Schneider* and Gilbert as mortgagees, it results necessarily that the *Reeds* and Schneider became the owners of the equity of redemption in equal undivided shares, though there was no specific finding or judgment to this effect. The court further found, however, that it was agreed between the *Reeds* and Schneider, before procuring the loan, that Schneider was only to have his third interest on paying to the *Reeds,* out of any sales of the land, if there was enough for the purpose, the sum of $2,000. This finding has never been excepted to by Schneider, and he has taken no appeal, so he is bound by it. There have been no sales of land, and no money paid by Schneider. The trial judge made no finding or judgment further defining Schneider's interest, liabilities, or rights; although in his written opinion he says that the *Reeds* became entitled to a lien upon his interest in the land, whatever it was, for the $2,000, and that to these rights *Kerwin* succeeds. The judgment gives *Kerwin* no such relief, and his failure is assigned as error. The preliminary agreement between the *Reeds* and Joseph Schneider, whatever it was, seems to have been, as between themselves, the very foundation of the subsequent transaction with *John Schneider* and Gilbert, and no good reason is perceived why, in this equitable action, it should not be made effective. To adjudge him to be the absolute owner of one-third interest in the title of the mortgaged lands on equitable principles, when it stands confessed that he has in no way paid, and is not to be required to pay, what was agreed as the consideration therefor by the terms of the arrangement on which his interest is based, is an anomaly in the administration of the principles of equity. The judgment should de-

finitely declare the title to the equity of redemption in the mortgaged lands to be in *Kerwin* as to two thirds and in Joseph Schneider as to one third, in undivided shares. It should also impose a lien upon Schneider's one third (subordinate, however, to the interests of the Brighton Beach Company and Engels as to the parcel occupied by said company) in favor of *Kerwin* for $2,000, without interest, and to be paid out of moneys received from the first sales of the land after the mortgage is discharged. It should also provide for the working out of this lien by providing that Schneider might pay it in cash, and thus clear his title therefrom, by further providing that, in case of redemption by *Kerwin* of *John Schneider's* interest in the mortgage, he should have not only his rights to sell Joseph Schneider's one-third interest by foreclosure sale, to pay his share of the mortgage debt, but also should retain the $2,000 lien in that interest; that in case of redemption by Joseph Schneider he should be subrogated to the mortgagees' right to sell at the foreclosure sale *Kerwin's* two thirds interest to pay the *Reeds'* two thirds of the mortgage debt, the lien for $2,000 in favor of *Kerwin* still remaining on his one third; that in case of sale upon foreclosure resulting in a surplus *Kerwin* should have a lien upon such surplus (subject to the lien of the Brighton Beach Company and Engels in any surplus on the Brighton Beach tract, to the amount of $2,000, and that so far as said lien is paid by such surplus the balance of the land remaining unsold, if any, be relieved from said lien.

As modified by the foregoing suggestions, the provisions of the former judgment should be embodied in the new judgment.

By the course above indicated it is believed that the rights of all parties will be properly protected. Further testimony should be taken upon the question of enhancement in value of the Brighton Breach parcel by the improvements thereon,

and upon the question of the reasonable rental value thereof while occupied by the company, but upon no other questions.

*By the Court.*—Judgment reversed, and remanded for further proceedings, and for judgment in accordance with law and this opinion.

KERWIN, J., took no part.

On January 10, 1905, the mandate in this case was amended so as to read as follows:

*By the Court.*—The appeal of *Charles Reed* and *W. W. Reed* is dismissed with costs; and upon the appeal of *J. C. Kerwin* the judgment is reversed with costs and the action remanded for further proceedings and for judgment in accordance with law and this opinion.