LOCAL 1111 OF THE UNITED ELECTRICAL, RADIO & MACHINE WORKERS OF AMERICA and others, Plaintiffs, vs. ALLEN-BRADLEY COMPANY, Defendant. [Two appeals.]*

*October 9—November 6, 1951.*

---

* Motion for rehearing denied, with $25 costs, on February 5, 1952.

*Daniel D. Sobel* of Milwaukee, for the plaintiffs.

For the defendant there were briefs by *Lines, Spooner & Quarles,* attorneys, and *John G. Kamps* and *Robert L. Mann* of counsel, all of Milwaukee, and oral argument by *Mr. Mann.*

FRITZ, C. J.   The plaintiff, Rose Giaimo, was an employee of the Allen-Bradley Company (hereinafter called "employer"). Local 1111 (hereinafter called "union") is a labor union which on June 22, 1948, entered into a collective-bargaining agreement with the employer, wherein the union was recognized as the exclusive bargaining agent for all of the employer's production and maintenance employees. Said agreement provided for the settlement of "grievances," leaves of absence, etc., and it had the following provision:

"In cases where it is necessary for employees with seniority to be absent for more than two weeks on account of sickness, they will be granted a leave of absence at their request, when substantiated by a doctor's certificate of necessity, and such leave will be extended at the end of each three-months period

under the same provisions. In confinement cases the leave of absence shall be limited to six (6) months after birth. Full seniority credit shall be given for sick leave."

Plaintiffs alleged in their complaint that under and pursuant to the bargaining agreement, Rose Giaimo applied for and was granted a leave of absence on account of illness; and following her illness she applied for re-employment but the employer refused to grant such re-employment; that a grievance under the terms of said collective-bargaining agreement was processed by the union and the employer, concerning Rose Giaimo, but the employer refused to reinstate her. The parties were unable to settle said grievance satisfactorily, whereupon the union invoked the arbitration provision in paragraph 42 of said agreement. In answer to the complaint the employer alleged matters of defense because of which it denied that Rose Giaimo was entitled to be reinstated as an employee, and alleged that the court had no jurisdiction to grant the prayer of the plaintiffs' complaint or to order defendant to arbitrate the controversy existing between the parties to the action.

After a trial of issues under the pleadings Judge BREIDEN-BACH stated in a written decision:

"The parties before the commencement of the trial entered into an oral stipulation setting forth the facts as follows:

" 'Plaintiff, employee, Rose Giaimo, was employed by the defendant in December, 1943, as a production employee and as included by the bargaining unit represented by the plaintiff union; she continued in her employment until May of 1946, when she applied to her employer, the defendant herein, for leave of absence on account of illness and submitted in connection with her application for such leave, a doctor's certificate of the necessity therefor. The leave was granted to her by the employer. The employee was admitted to the Hospital for Mental Diseases in Milwaukee county. On September 25, 1946, the employer defendant sent a letter addressed to Rose Giaimo to her home, which requested in effect that Rose Giaimo advise the employer as to her health

status. That letter, although not received by Rose Giaimo herself was actually received by members of her family and in response to that letter, the employer received two communications, the first dated, October 7, 1946, from a doctor stating in effect that Rose Giaimo was under his care and would remain so for a period of about ninety days; the second letter received by the employer defendant is dated December 26, 1946, which second letter was sent by the Hospital for Mental Diseases advising the employer that Rose Giaimo was a patient at that hospital and she would remain there indefinitely. Following the receipt by the employer of the letter from the Hospital for Mental Diseases, no further doctor's certificates were received by the employer.

" 'On April 25, 1947, defendant employer sent a letter to the plaintiff union advising, among other things, that the employee Rose Giaimo had "quit."

" 'On October 1, 1948, plaintiff employee, Rose Giaimo, appeared at the plant of the defendant employer, and requested her job back. She was advised at that time by the personnel department that no work was available for her at that time. Upon hearing this, Rose Giaimo informed the plaintiff union of the action taken by the defendant. Whereupon the union filed a grievance with the employer. This grievance was discussed between the plaintiff union and the employer on several occasions with the top bosses of the respective parties. It appeared to the plaintiff union that no adjustment could be made of the grievance to this employee; when it appeared to the union that no amicable adjustment could be reached between the parties, the union, by written communication, invoked arbitration in this matter. Whereupon, the defendant employer by written communication to the union advised, in effect, that in its judgment this was not a grievance that it would not agree to arbitrate the matter relating to Rose Giaimo and it would refuse to participate in any arbitration relating to her and her job.

" 'Whereupon the union commenced the instant declaratory-judgment proceeding.' "

Judge Breidenbach then stated:

"It appears, therefore, that Rose Giaimo, was confined to the Hospital for Mental Diseases during the period of her

leave of absence and was therefore unable to comply with the provisions with respect to furnishing doctor's certificates of necessity during the period of such confinement and that under all of the facts and circumstances disclosed by the stipulation and the testimony taken upon the trial the question of the right of Rose Giaimo for re-employment presented a 'grievance' within the intent and contemplation of the bargaining agreement and that, therefore, the plaintiffs were entitled to have such question and grievance submitted for arbitration pursuant to provisions of paragraph 22 of the bargaining agreement; and plaintiffs are entitled to judgment declaring the contract in full force and effect; and that it was the intent of the contract that under the facts disclosed that the grievance herein should be submitted to arbitration.

"The prayer of plaintiffs' complaint demands judgment (2) 'for an order of this court requiring the defendant company to arbitrate the grievance concerning the employee, Rose Giaimo, under the provisions of said collective-bargaining agreement; (3) for an order of this court restraining and enjoining the defendant company from further violating the terms and provisions of the said agreement.' . . .

"Section 298.01, Stats., relating to arbitration provides:

" 'A provision in any written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract; provided, however, that the provisions of this chapter shall not apply to contracts between employers and employees, or between employers and associations of employees, except as provided in section 111.10 of the statutes.' "

Judge BREIDENBACH also stated:

"Thus it appears that the provisions for specific enforcement of arbitration of future disputes does not apply to contracts between employers and employees. We must, therefore, look to common law to determine whether or not such contracts are enforceable.

"Plaintiffs in support of their contention rely upon *Hopkins v. Gilman,* 22 Wis. 476; *Schneider v. Reed,* 123 Wis. 488, 101 N. W. 682; *Kipp v. Laun,* 146 Wis. 591, 131 N. W. 418; *Depies-Heus Oil Co. v. Sielaff,* 246 Wis. 36, 16 N. W. (2d) 386. These cases are distinguishable upon the ground that they involved the principle of appraisement and not of arbitration and therefore are not applicable to the situation here presented.'

" 'The distinction between appraisal and arbitration is of great importance, as appraisals are subject at common law to rules in many respects different from those applied to arbitration, and the modern arbitration statutes are held not to apply to appraisals.' 6 Williston, Contracts (rev. ed.), p. 5371, sec. 1921.

"In *Utility Workers Union v. Ohio Power Co.* [Ohio Com. Pl.] 77 N. E. (2d) 629, in construing a statute similar to the Wisconsin statute, the court said :

" 'In the absence of a statute requiring the specific performance of a contract to arbitrate, it is generally held throughout the various jurisdictions in this country that an agreement to arbitrate either an existing or a possible future dispute, while not illegal, will not be specifically enforced, prior to the making of an award. . . .

" 'The court is of the opinion that under the present Ohio. law a contract between· a labor union which provides that disputes as to wages and conclusions of labor shall be submitted to arbitration is not invalid in this state, but since there is no statute in Ohio authorizing a court to decree specific performance of a labor-arbitration agreement and as an arbitration agreement is not specifically enforceable prior to the making of an award under the common law, the court is without authority to entertain the plaintiff's petition.'

"The proposition is stated in Restatement, 2 Contracts, p. 1055, sec. 550, as follows :

" 'Except as stated in section 558, a bargain to arbitrate either an existing or a possible future dispute is not illegal, unless the agreed terms of arbitration are unfair; but will not be specifically enforced, and only nominal damages are recoverable for its breach.'

"*Gates v. Arizona Brewing Co.* 54 Ariz. 266, 95 Pac. (2d) 49; 3 Am. Jur., Arbitration and Award, pp. 856, 899,

906, secs. 31, 70, 74; 6 Williston, Contracts (rev. ed.), p. 5324, sec. 1900; see 6 C. J. S. sec. 33.

"For the reasons given herein it follows that the court must deny the prayer for specific enforcement.

"Findings of fact and conclusions of law in accordance with this decision may be submitted for signature."

As stated in 3 Am. Jur., Arbitration and Award, p. 856, sec. 31, cited by Judge BREIDENBACH:

"So long as agreements to arbitrate, made in advance of the controversy, remain executory, different rules prevail than in the case of executed agreements. It is settled at common law that a general agreement, in or collateral to a contract, to submit to final determination by arbitrators the rights and liabilities of the parties with respect to any and all disputes that may thereafter arise under the contract is voidable at will by either party at any time before a valid award is made, and will not be enforced by the courts, because of the rule that private persons cannot, by a contract to arbitrate, oust the jurisdiction of the legally constituted courts. Many of the courts call such contracts illegal and void, but this characterization has been criticized as wanting in strict accuracy, in view of the authority sustaining enforcement of executed agreements, and other cases which apparently support a right to recover damages in case of breach.

"Whether the foregoing rule, which has variously been attributed to early jealousy of the courts concerning the exclusiveness of their jurisdiction and to considerations of public policy, rests on a satisfactory basis had been questioned, but it has been so long settled that the courts are unwilling to disturb it." See also 3 Am. Jur., Arbitration and Award, p. 899, sec. 70; Id., p. 906, sec. 74.

The facts found by the court on the evidence introduced on the trial warranted the following conclusions of law made by the court, to wit:

"(1) That the question of the right of Rose Giaimo to re-employment constituted a 'grievance' within the intent and meaning of the collective-bargaining agreement; (2) that plaintiffs are entitled to have such grievance submitted

to arbitration pursuant to the provisions of the said agreement; (3) that plaintiffs are entitled to judgment of the court declaring the agreement in full force and effect; (4) that it was the intent of the said agreement that under the facts disclosed by the testimony and stipulation the grievance of Rose Giaimo should be submitted to arbitration; (5) that the court is *lacking in statutory or common-law authority to require* the defendant company *to arbitrate said grievance* pertaining to Rose Giaimo as it was the intent of the parties should be done and therefore denies the prayer for enforcement thereof."

Consequently in view of the fifth conclusion of law there was duly warranted the court's adjudication, in paragraph No. 4 of the judgment, that:

"The *court is lacking in statutory or common-law authority to require the defendant corporation to arbitrate the said grievance* pertaining to the plaintiff Rose Giaimo *as it was the intent* of the *plaintiff union and defendant company* should be done and therefore the court *denies the prayer of plaintiffs for enforcement thereof.*"

Sec. 298.01, Stats., which provides for the settlement of disputes by arbitration and that contracts to settle controversies by arbitration are valid and enforceable, but expressly excepts from its effect contracts between employers and employees, existed in 1939 when the legislature, by ch. 57 enacted the "Employment Peace Act." By that act the legislature provided in great detail for the settlement of labor disputes and designated certain acts on the part of both employer and employee as unfair labor practices. In the closing paragraph of ch. 57, sec. 298.01 is re-enacted.

The re-enactment of sec. 298.01, Stats., in the same act which otherwise deals exclusively with matters affecting employer-employee relationships, is most significant. It is the expression of the legislature that it intended to continue the rule that agreements for the arbitration of labor disputes should not be enforceable. Whether or not we should agree with Judge BREIDENBACH that the common law requires us

to hold an agreement for the arbitration of future disputes unenforceable, we may not overlook the positive declaration of the legislature that such agreements made between employer and employee are not enforceable as are such contracts made by others.

If the legislature had contemplated that the provisions of ch. 298, Stats., should apply to contracts between employers and employees it certainly would not re-enact it by ch. 57, Laws of 1939.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting*). Most collective-bargaining agreements in effect today in Wisconsin between labor unions and employers provide for an arbitration procedure as the final step in settling grievances. In these agreements the union usually gives up the right to strike, and the employer the right to lock out its employees, in return for the mutual agreement for a settlement of grievances procedure, with arbitration as the final step, both parties agreeing to be bound by the decision of the arbitrator, or arbitrators. Such agreements are very much in the public interest as they tend to greatly reduce the occurrence of strikes, and therefore public policy would seem to require that such agreements be lived up to by both employers and unions.

While the learned trial court's decision, that enforcement of the arbitration provision in the collective-bargaining agreement at issue in this case is not enforceable at common law, is in accord with the majority rule, such rule has been definitely repudiated in some jurisdictions. The author of the annotation "Agreement for Future Arbitration" appearing in 135 A. L. R. 79, states (p. 94):

"In recent years a judicial tendency to question the rule against stipulations to arbitrate all future disputes has been increasingly evident. In a few jurisdictions the rule has been definitely repudiated."

I cannot subscribe to the theory that the common law is an inflexible instrument which does not permit growth and adjustment to meet the social needs of the times. This court in the past has repudiated this very theory. Mr. Justice NELSON in his opinion in *Schwanke v. Garlt*, 219 Wis. 367, 371, 263 N. W. 176, declared:

"While we are at all times bound to uphold the constitution of this state, and to give due effect to its paramount provisions, we may not ignore the fact 'that the common law is susceptible of growth and adaptation to new circumstances and situations, and that courts have power to declare and effectuate what is the present rule in respect of a given subject without regard to the old rule. . . . The common law is not immutable, but flexible, and upon its own principles adapts itself to varying conditions.' *Dimick v. Schiedt*, 293 U. S. 474, 55 Sup. Ct. 296. To the same effect is *Funk v. United States*, 290 U. S. 371, 54 Sup. Ct. 212, 78 L. Ed. 369."

It seems illogical to hold in this case that the arbitration provisions of the contract are valid, but that the court is powerless to enforce them by compelling the employer company to arbitrate the union's grievance.

While, as pointed out in the majority opinion, the legislature has not specifically authorized court enforcement of arbitration clauses contained in labor collective-bargaining agreements, nevertheless this does not preclude the court from enforcing such a clause if it possesses the power so to do at common law independently of statute.

Sec. 269.56 (8), Stats., provides "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." I would reverse the judgment of the trial court and enter judgment ordering the employer company to join with the union in submitting the grievance to arbitration in the manner provided in the contract.

I am authorized to state that Mr. Justice BROADFOOT joins in this dissent.