Dunphy Boat Corporation, Respondent, vs. Wisconsin
Employment Relations Board, Appellant.*

*May 7—June 8, 1954.*

* Motion for rehearing denied, without costs, on October 5, 1954.

318

320

For the appellant there were briefs by the *Attorney General* and *Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

For the respondent there was a brief by *Thompson, Gruenewald & McCarthy* of Oshkosh, and oral argument by *Robert R. Thompson* and *Marvin L. McCarthy.*

A brief was filed by *Max Raskin* of Milwaukee, for the Wisconsin State Industrial Union Council and the International Union, United Automobile, Aircraft, and Agricultural Implement Workers of America, as *amicus curiae.*

STEINLE, J.   The principal issue before us in this matter is whether the Wisconsin Employment Relations Board has authority under sec. 111.07 (4), Stats., to compel an employer, who has violated a provision in a collective-bargaining contract, requiring it to arbitrate future disputes between it and the union, by refusing to arbitrate a particular dispute, to comply with such provision of the contract and to proceed to arbitrate such dispute.

In order to resolve this issue it is necessary to construe certain portions of the Wisconsin Employment Peace Act (ch. 111, Stats.), enacted by our legislature in 1939. Sec. 111.06 (1) (f), Stats., makes it an unfair labor practice for an employer "to violate the terms of a collective-bargaining

agreement (including an agreement to accept an arbitration award)." Nowhere else in ch. 111, Stats., does there appear any express provision excepting from the operation of this clause a provision in a collective-bargaining contract providing for the arbitration of future disputes between the parties thereto. Necessarily a provision inserted in a collective-bargaining contract requiring the doing of something illegal or against public policy would by implication be void and excluded from the provisions of sec. 111.06 (1) (f). However, there is nothing illegal or against public policy in a contract provision requiring the parties to arbitrate a future dispute. At common law such an agreement was not illegal but merely not specifically enforceable. On this point see authorities cited at page 614 of our decision in *Local 1111 v. Allen-Bradley Co.* (1951), 259 Wis. 609, 49 N. W. (2d) 720.

The words "including an agreement to accept an arbitration award," appearing in parentheses in sec. 111.06 (1) (f), Stats., do not have reference to a particular clause in a customary collective-bargaining agreement but rather to a separate agreement between an employer and a union relating to the arbitration of a present dispute which has arisen between them. By employing such language the legislature apparently wished to make sure that such a separate agreement was embraced within the category of a "collective-bargaining agreement." The rule of statutory construction, *"expressio unius est exclusio alterius"* has no application here.

We are satisfied that the violation by an employer of a clause in its collective-bargaining agreement, which requires it to arbitrate a future dispute which may arise during the term of the contract between it and the union, does constitute an unfair labor practice within the meaning of sec. 111.06 (1) (f), Stats. What are the powers with which the legislature has invested W. E. R. B. to deal with such a violation? The answer is to be found in the provisions of

sec. 111.07, and in particular in sub. (4) thereof. W. E. R. B. is authorized to entertain complaints alleging an unfair labor practice, to conduct a hearing with respect thereto, and to issue both interlocutory and final orders. Sub. (4) of sec. 111.07 specifically provides with respect to the form such final orders may take as follows:

". . . Final orders may dismiss the charges or require the person complained of to *cease and desist from the unfair labor practices* found to have been committed, suspend his rights, immunities, privileges, or remedies granted or afforded by this subchapter for not more than one year, *and require him to take such affirmative action,* including reinstatement of employees with or without pay, *as the board may deem proper.* Any order may further require such person to make reports from time to time showing the extent to which he had complied with the order." (Italics supplied.)

Under the foregoing statutory provision, we deem that the provisions of the order entered by W. E. R. B. in the instant case were proper, and that the employer was rightly ordered not only to cease and desist from violating the arbitration provisions of the contract but also to affirmatively comply with and carry out such provisions with respect to the particular dispute at issue.

Counsel for the employer contend that the provisions of sec. 111.10, Stats., by implication restrict the power of W. E. R. B. under sec. 111.07 (4) to compel enforcement of a clause in a collective-bargaining agreement requiring arbitration of future disputes between the parties. Sec. 111.10 provides that parties to a labor dispute may agree in writing to have W. E. R. B. name arbitrators to arbitrate the same, and that the procedure to be followed in such an arbitration shall be that prescribed in ch. 298, Stats. We are constrained to conclude that sec. 111.10 was intended by the legislature to add to the powers of W. E. R. B. and not limit and circumscribe the same. Ch. 111, Stats., should be liberally construed to secure the objectives stated in the declaration

of policy set forth in sec. 111.01. Industrial peace will be better promoted by holding that the powers with which W. E. R. B. is invested by secs. 111.07 (4) and 111.10 are cumulative rather than mutually exclusive.

Counsel for the employer further maintain that the reference in sec. 298.01,[1] Stats., to sec. 111.10 is additional evidence that the legislature intended to invest W. E. R. B. with no power to deal with the general subject of arbitration of labor disputes except as provided in sec. 111.10. This argument seems to suggest that if sec. 298.01 had used the words "except as provided in ch. 111 of the statutes" then there would be disclosed a legislative intent to permit W. E. R. B. to compel enforcement of arbitration clauses under powers granted to it elsewhere in the chapter other than by sec. 111.10. We are unable to concur in this view. It seems clear that all the legislature was attempting to accomplish with respect to collective-bargaining agreements in the language employed by it in sec. 298.01 was to exclude the same from the provisions of ch. 298, Stats. However, because sec. 111.10 specifically required any W. E. R. B. appointed arbitrators to follow the arbitration procedure set forth in ch. 298, Stats., it was necessary to make the exception it did with respect to sec. 111.10. If it had not done so there would have been a direct conflict between secs. 111.10 and 298.01. We attribute no further import to the language used

---

[1] Sec. 298.01, Stats. 1951. *Arbitration clauses in contracts enforceable.* A provision in any written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract; provided, however, that the provisions of this chapter shall not apply to contracts between employers and employees, or between employers and associations of employees, except as provided in section 111.10 of the statutes.

in sec. 298.01 in alluding to sec. 111.10 than to avoid such conflict.

Because this court in *Local 1111 v. Allen-Bradley Co., supra,* held that the courts of this state are without power to specifically enforce a provision in a collective-bargaining agreement for the future arbitration of disputes between the parties, it does not follow that W. E. R. B. cannot be held to be invested with such power that has been denied to the courts. Our holding in the *Allen-Bradley Case* was based upon the premise that courts were powerless at common law to enforce an agreement to arbitrate a future dispute, and, therefore, without statutory authority conferring such power on the courts, they could not grant specific performance of such a contract. Ch. 298, Stats., was the only statute which attempted to invest the courts of this state with power to specifically enforce an agreement to arbitrate future disputes, but sec. 298.01, Stats., thereof specifically excluded labor contracts from the provisions of that chapter. *However, sec. 298.01 does not declare that arbitration clauses in labor contracts are not specifically enforceable,* but merely states that the provisions of ch. 298 shall not apply to collective-bargaining contracts between employer and employee, except as provided in sec. 111.10. There is, therefore, no necessity to resort to ch. 298, Stats., in order to construe ch. 111, Stats., with respect to the powers conferred by the latter chapter upon W. E. R. B.

There is nothing to prevent the legislature from conferring powers of a quasi-judicial nature upon administrative agencies with which it does not invest the courts. For example, our trial courts have no authority to grant workmen's compensation benefits to injured employees in spite of the fact that such power has been granted to the industrial commission by ch. 102, Stats.

Counsel for the employer have been unable to point to a single statute which expressly prohibits W. E. R. B. from

doing exactly that which it ordered in the case at bar. All of the arguments advanced ask this court to reach such conclusion by implication as a result of statutory construction based upon the history of the various statutes considered herein. On the other hand, the attorney general has pointed out that in at least seven decisions, the earliest of which was rendered in 1946, W. E. R. B. found employers to have committed unfair labor practices under sec. 111.06 (1) (f), Stats., by violating arbitration clauses in collective-bargaining contracts, and ordered the violators to arbitrate in the manner prescribed in such contracts. We thus have a practical construction of secs. 111.06 (1) (f) and 111.07 (4) by W. E. R. B. extending for approximately eight years, with which practical construction the legislature has not sought to interfere. Such acquiescence of the legislature in the practical interpretation placed upon statutes by the administrative agency charged with their enforcement has often been held by this court to be entitled to great weight in construing such statutes. *Estate of Stevens* (1954), 266 Wis. 331, 336, 63 N. W. (2d) 732; *Smith v. Wisconsin Department of Taxation* (1953), 264 Wis. 389, 392, 59 N. W. (2d) 479; *Wisconsin Axle Division v. Industrial Comm.* (1953), 263 Wis. 529, 537b, 57 N. W. (2d) 696, 60 N. W. (2d) 383; *Western Printing & Litho. Co. v. Industrial Comm.* (1951), 260 Wis. 124, 137, 50 N. W. (2d) 410.

We turn now to the question raised by the employer's motion for review, *i. e.,* that the dispute between the employer and the union relating to the method of computing the incentive bonus is not arbitrable under the terms of the current collective-bargaining agreement existing between the parties. W. E. R. B. found such matter was arbitrable and the trial court sustained such findings.

The first contention urged by the employer on this issue is that inasmuch as the change in method of computing the incentive bonus occurred in 1949, and new collective-bargain-

ing agreements were entered into as of December 1, 1950, and December 1, 1951, there was no change made by the employer in *"current practices,"* as such term is used in section 11.05 of such contracts. This is because the method of computing the incentive bonus used after the change made therein the latter part of 1949 constituted the *"current practice"* with respect thereto at the time of the signing by the parties of the contracts of December 1, 1950, and December 1, 1951. However, even if the employer be correct in this contention, there exists an arbitrable dispute under the agreement in effect between the parties when the alleged unauthorized change was made in 1949.

The employer further contends that the union by its acquiescence in entering into the subsequent collective-bargaining agreements has waived any right to request arbitration of the issue, and in any event the union's right to have this issue arbitrated has been barred by laches. However, the defenses of waiver and laches are available to the employer before the board of arbitration and we deem that it is for the board of arbitrators to pass thereon rather than this court. In other words, if the original dispute is arbitrable, the merit of the defenses available to the employer are to be considered in the arbitration proceedings. If we were to hold otherwise, any party to a labor contract who wished to circumvent the arbitration procedure provided in such contract could come into court and assert that its position in the dispute was legally correct, and have the court pass upon the issue instead of the arbitrators.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment affirming the order of the Wisconsin Employment Relations Board, and enforcing the provisions thereof as prayed for in the petition of said board.

GEHL, J. (*dissenting*). That an executory agreement to arbitrate any and all disputes between the parties which

might thereafter arise was unenforceable at common law is not questioned. It was so held by the court in *Local 1111 v. Allen-Bradley Co.* 259 Wis. 609, 49 N. W. (2d) 720. In the instant case the board does not contend otherwise. If it was the purpose of the legislature to change the law, clear expression of such intent must be found in the statute. "To have such effect 'the language [of the statute] must be clear, unambiguous, and peremptory.'" *Wisconsin B. & I. Co. v. Industrial Comm.* 233 Wis. 467, 474, 290 N. W. 199. There is no language in either ch. 111 or ch. 298, Stats., which suggests a purpose to change the law as it affects contracts between employers and employees. Sec. 298.01, Stats., in express terms, makes the ordinary contract to settle future disputes enforceable and thus changes the common law. But in language just as clearly and plainly expressed it makes its provisions inapplicable to such contracts between employers and employees.

The board contends, however, that secs. 111.07 (4) and 111.06 (1) (f), Stats., grant to it authority which has been denied to the courts. If the board, a nonjudicial agency, is to be considered as having been vested with the right to exercise the judicial power claimed by it, we must find at least statutory authority therefor.

"No proposition of law is better established than that administrative agencies have only such powers as are expressly granted to them or necessarily implied and any power sought to be exercised must be found within the four corners of the statute under which the agency proceeds." *American Brass Co. v. State Board of Health,* 245 Wis. 440, 448, 15 N. W. (2d) 27.

Sec. 111.07 (4), Stats., authorizes the board, upon finding of an unfair labor practice, to—

". . . require the person complained of to cease and desist from the unfair labor practices found to have been committed,

. . . and require him to take such affirmative action, . . . as the board may deem proper. . . ."

Sec. 111.06 (1) (f), Stats., makes it an unfair labor practice—

"To violate the terms of a collective-bargaining agreement (including an agreement to accept an arbitration award)."

It is to be observed that the inhibition is not against a refusal to arbitrate in accordance with an agreement therefor—it is against a refusal to accept an award and presupposes that arbitration proceedings have been had. Having in mind the broad and all-inclusive provision for exclusion of the provision of sec. 298.01, Stats., and unless it is to be entirely ignored, the statutes upon which the board relies may not be interpreted otherwise.

By ch. 274, Laws of 1931, ch. 298, Stats., was amended so as to provide that "a provision in any written contract to settle by arbitration a controversy *thereafter* arising out of such contract" shall be enforceable but expressly excluded contracts between employers and employees from its operation.

It is thus clear that by ch. 274, Laws of 1931, the legislature expressed a purpose to make contracts for the settlement of future disputes enforceable, except those between employers and employees.

Sec. 298.01, Stats., was amended by ch. 57, Laws of 1939, and contains the precise language but adds at its very end "except as provided in section 111.10 of the statutes." Sec. 111.10 is not applicable here because it provides for arbitration by "parties to a labor dispute" indicating a purpose to have it apply only to existing disputes.

The Labor Peace Act of which sec. 111.06 (1) (f), Stats., is a part was created by ch. 57, Laws of 1939, and it is quite significant that sec. 298.01 was amended by that very act of the 1939 legislature; it indicates very clearly that no part

of the Labor Peace Act was intended to repeal or amend the broad provisions of sec. 298.01 and the exclusion of labor contracts from its operation.

It is most significant that when sec. 298.01, Stats., was amended by the legislature of 1939, provision was made for the enforcement of an existing labor dispute, one contemplated by provisions of sec. 111.10. It seems that if the legislature had intended that contracts for arbitration of future labor disputes should be enforceable it would have said so, and that the legislature must have had in mind in the enactment of sec. 111.06 (1) (f) that to refuse to submit to an award made upon an agreement to settle by arbitration only an *existing* dispute is an unfair labor practice.

If sec. 111.06 (1) (f), Stats., is to be construed as the board contends, it would create an inconsistency, a result which should be avoided "when a reasonable interpretation can be adopted which will not do violence to the plain words of the act and will carry out the intention of (the legislature)." 50 Am. Jur., Statutes, p. 367, sec. 363. Plain words are employed in sec. 298.01. They are not open to construction, and definitely and clearly exclude from their application the legislative departure from the common-law rule that contracts for arbitration of future disputes are not enforceable. The two statutes are made reconcilable only by construing sec. 111.06 (1) (f) as being applicable only to the situation where an agreement to arbitrate is made as to an existing dispute, a construction which does no violence to its terms. I would concede that generally there has been a judicial tendency to question the rule against stipulations to arbitrate future disputes. I might also be inclined to join with the courts which have repudiated the rule, had the legislature refrained from or omitted to declare the policy with respect to such agreements. We have nothing to do with questions of public policy. The determination of those matters rests exclusively with the legislature. I would affirm the judgment.