WONDER-REST CORPORATION, Appellant, vs. GALINA, Petitioner : WISCONSIN EMPLOYMENT RELATIONS BOARD, Respondent. [Case No. 202.]

WISCONSIN EMPLOYMENT RELATIONS BOARD, Respondent, vs. WONDER-REST CORPORATION, Appellant. [Case No. 203.]

*February 7—March 5, 1957.*

274

For the appellant there were briefs and oral argument by *A. L. Skolnik* of Milwaukee.

For the respondent there was a brief by the *Attorney General* and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

WINGERT, J.   1. At the outset we are met by the contention that Galina's complaint of unfair labor practice was barred by failure to exhaust the grievance procedure provided by the collective-bargaining contract.

Art. III, sec. 1 of the contract provided for a committee of three employees to act as a grievance committee "in behalf of the employees" to adjust grievances and disputes arising under the terms of the contract, with representatives of the company.   There was no provision, however, prescribing any procedure to be followed by an individual employee in presenting a grievance, nor requiring individual grievances to be presented exclusively through the grievance committee. The record does not disclose whether or not a grievance committee had actually been established pursuant to the contract.

The board found as facts:

"That on October 4, 1954, following his layoff, the complainant placed a call to William Kuester, his union representative, now deceased, protesting his layoff, and requesting

assistance to adjust the matter; that neither Kuester nor any other representative of the union has ever presented or processed a grievance on behalf of the complainant concerning his layoff."

Galina testified that he called Kuester the next day after he was laid off and Kuester replied, "I can't help you with nothing."

In that situation, nothing in the contract or in law barred Galina from presenting his claim of unfair labor practice to the board, or the board from entertaining it.

2. On the merits, we are constrained to hold that the board erred in ruling that Galina's seniority rights were violated when he was laid off on October 4, 1954. Accordingly the order for reinstatement and back pay must be set aside.

It is an unfair labor practice "to violate the terms of a collective-bargaining agreement" (sec. 111.06 (1) (f), Stats. 1953), and in appropriate proceedings the board may order the violator to comply with the contract. *Dunphy Boat Corp. v. Wisconsin E. R. Board,* 267 Wis. 316, 322, 323, 64 N. W. (2d) 866.

The violation found by the board consisted in laying off Galina while retaining the employees with less seniority. The board held that Galina's seniority dated from his original employment in 1950, and that his layoff ahead of the other two men in the department, who were hired in later years, violated the contractual requirement that "employees will be laid off according to seniority."

Concededly Galina was put on sick leave when he was hurt, and was treated by the company as on leave of absence until the meeting of September 18, 1954. We assume that while on such leave of absence he remained an employee and retained his seniority.

The controversy turns on the effect of the occurrences at the meeting of September 18th between Galina and his spokesman and representatives of the company and union.

The company contends that in effect Galina was then discharged for failing to maintain his membership in the union in good standing by paying his union dues, and that therefore he lost all seniority rights and started at the bottom of the seniority ladder when he returned to work on September 27th. On the other hand, the board stated in its memorandum decision that the company did not terminate the employment status in any way, but kept Galina on the pay roll on a leave-of-absence status; and it made a formal finding of fact that he was treated as being on leave of absence until September 25, 1954. The board concluded that he therefore retained seniority from his original employment in 1950.

We are constrained to hold that the board's determination cannot stand. Giving the evidence of the transaction of September 18th the interpretation most favorable to Galina, and accepting* the board's finding of fact that the company agreed to return him to active employment only upon the condition that he again join the union and start as a new employee, we think the only permissible conclusion is that his old employment was terminated pursuant to the contract with the union, on account of his failure to pay the dues required to maintain his membership in the union in good standing. Any other interpretation of the company's position and statements at the meeting seems unrealistic. The board's finding that the union did not request Galina's discharge does not alter the case, because under the maintenance-of-membership provision of the contract, the company was within its rights in discharging the delinquent employee without waiting for a request from the union.

This conclusion disposes of the present appeal, for it follows that when Galina went back to work on September 27th, it was a new employment rather than a continuation of the old one, and therefore he lost the benefit of his previous seniority and was junior to the two other employees in the de-

partment. Therefore no seniority rights were violated when he was subsequently laid off.

3. Counsel for the board argues that the finding of unfair labor practice and the order for reinstatement with back pay are nevertheless sustainable on other grounds. It is said that in laying off Galina on October 4, 1954, the company violated provisions of the contract to the general effect (1) that available work should be divided equally among all "regular" employees "so far as is practicable," (2) that employees should be laid off only when there is less than thirty-two hours of work per week available for each employee, (3) that prior to any layoff, the company will "whenever possible" give a full pay-period advance notice to any employee who is to be laid off, and (4) will consult the committee of the union regarding the contemplated layoffs.

The board's findings of fact were directed exclusively to the alleged violation of seniority rights by laying off Galina while retaining junior employees, and are inadequate to support a finding that the employer committed the unfair labor practice of violating the contract in any of the other respects now asserted. Indeed Galina's petition to the board did not assert other violations, and they were scarcely litigated. Before the order for reinstatement and back pay could be sustained, there would have to be findings on such questions as whether Galina was a "regular" employee, and whether it was "practicable" to divide the available work so as to avoid laying him off.

In order that the board may determine whether to proceed further on Galina's complaint, by way of amendment, further hearing, additional findings, or otherwise, the lower court will be directed to remand the case to the board for further proceedings consistent with this opinion.

4. Since the board's order must be set aside *in toto,* we need not consider the company's criticism of that part of it requiring payment of $1,000 on account of wage loss.

*By the Court.*—The judgment in No. 202 is reversed, with directions to set aside the order of the Wisconsin Employment Relations Board and remand the record to the board for any further proceedings consistent with this opinion that may be appropriate.

The judgment in No. 203 is reversed, with directions to dismiss the petition for enforcement.