WILLIAM O'DONELL, INC., Appellant, v. WISCONSIN EM-
PLOYMENT RELATIONS BOARD, Respondent: GENERAL
DRIVERS, DAIRY EMPLOYEES & HELPERS UNION LO-
CAL No. 579, Intervenor and Respondent.

*October 29—November 30, 1964.*

4

For the appellant there were briefs by *Melli & Smith* of Madison, and oral argument by *Joseph A. Melli.*

For the respondent Wisconsin Employment Relations Board the cause was argued by *Beatrice Lampert,* assistant

attorney general, with whom on the brief was *George Thompson,* attorney general.

For the intervenor-respondent, there was a brief by *Goldberg, Previant & Uelmen* of Milwaukee, and oral argument by *David Leo Uelmen.*

HEFFERNAN, J. We agree with the decision of the circuit court that the W. E. R. B. properly ordered that the discharge grievance be resubmitted to the joint committee.

The company contends that prior to the charge against it, its actions were not limited by any order of the W. E. R. B.; and now that the charges have been disposed of, it asserts the proceedings should cease, the petition be dismissed, and it should be placed in the same position that it was before the unfair-labor-practice proceeding was commenced.

While initially this position seems persuasive, a closer analysis of the facts surrounding this litigation shows that this contention cannot be supported.

This litigation is not only a matter of concern to the immediate parties; it is particularly the concern of the discharged employee and of the public.

The joint committee's jurisdiction is specifically recognized by a collective-bargaining agreement entered into between the union and the company. Article VII of the agreement provides:

"Section 1. *Joint State Committee.* The Operators and the Union shall together create a permanent Joint State Committee. The Joint State Committee shall consist of an equal number representing Employers and Unions but no less than three (3) from each group. Each member may appoint an alternate in his place. The Joint State Committee shall at its first meeting formulate rules of procedure to govern the conduct of its proceedings. The Joint State Committee shall have jurisdiction over disputes and grievances

involving Local Unions or complaints by Local Unions located in the state."

This type of tribunal is given statutory recognition in sec. 111.06 (1) (g), Stats., which makes it an unfair labor practice:

"To refuse or fail to recognize or accept as conclusive of any issue in any controversy as to employment relations the final determination (after appeal, if any) of any tribunal having competent jurisdiction of the same or whose jurisdiction the employer accepted."

Both parties have sought to utilize the powers of the W. E. R. B., thus assuring that the arbitration board of which they are members can exercise its powers with a reasonable certainty of finality.

However, this section of the statutes, like all the provisions of ch. 111, Stats., is subject to the overriding policy considerations set forth in sec. 111.01:

"111.01 DECLARATION OF POLICY. The public policy of the state as to employment relations and collective bargaining, in the furtherance of which this subchapter is enacted, is declared to be as follows:

"(1) It recognizes that there are three major interests involved, namely: That of the public, the employe, and the employer. These three interests are to a considerable extent interrelated. It is the policy of the state to protect and promote each of these interests with due regard to the situation and to the rights of the others.

"(2) Industrial peace, regular and adequate income for the employe, and uninterrupted production of goods and services are promotive of all of these interests. They are largely dependent upon the maintenance of fair, friendly and mutually satisfactory employment relations and the availability of suitable machinery for the peaceful adjustment of whatever controversies may arise. . . . It is also recognized that whatever may be the rights of disputants with respect to each other in any controversy regarding employment relations, they should not be permitted, in the conduct of their

controversy, to intrude directly into the primary rights of third parties to earn a livelihood, transact business and engage in the ordinary affairs of life by any lawful means and free from molestation, interference, restraint or coercion.

"(3) . . .

"(4) It is the policy of the state, in order to preserve and promote the interests of the public, the employe, and the employer alike, to establish standards of fair conduct in employment relations and to provide a convenient, expeditious and impartial tribunal by which these interests may have their respective rights and obligations adjudicated. While limiting individual and group rights of aggression and defense, the state substitutes processes of justice for the more primitive methods of trial by combat."

The company relies on sec. 111.07 (4), Stats., which, to the extent that it is pertinent here, provides:

". . . Final orders may dismiss the charges or require the person complained of to cease and desist from the unfair labor practices found to have been committed, . . ."

From this the company concludes that since the charges were dismissed this is a final order, and that a final order is just what its name implies, that it ends the proceeding and the person charged is free of the W. E. R. B.'s jurisdiction. However, we find the definition of an interlocutory order referred to by the company applicable here. On the basis of its own definition, we have no trouble in holding that this order is interlocutory in that, as the company contends, it is "something which is done between the commencement and the end of a suit or action which decides some point or matter, which, however, is not a final decision of the matter in issue, . . ." Cyclopedic Law Dictionary (3d ed.), p. 591. Sec. 111.07 (4), Stats., clearly authorizes interlocutory orders.

The matter that is at issue here is one that falls within the category over which the W. E. R. B. has jurisdiction, i.e., "any controversy concerning unfair labor practices." Sec.

111.07 (1), Stats. The unfair labor practice which initiated the instant proceedings was the alleged failure of the employer to comply with the order of the joint committee. However, as the W. E. R. B. and the learned trial judge discerned, the real and underlying controversy is whether or not the employee Becker, not a party to this suit, was improperly discharged and whether he is entitled to reinstatement and back pay.

It must be remembered that this matter has been before the W. E. R. B. twice. The first time the W. E. R. B. held that the joint committee denied due process to the company when it entered an order without giving the company a reasonable time to produce a material witness. This matter was returned to the joint committee for a new hearing. The instant case resulted in a denial of due process when the company, at the second hearing, was not allowed the assistance of counsel in the presentation of its case.

This running altercation between the company and the joint committee, important as this dispute is in determining the important constitutional rights of due process, has not resolved the fundamental controversy that concerns the public—and that is, does a labor difference remain unsettled which could jeopardize peaceable relations between employer and employee to the detriment of the public. The trial judge has hazarded the prediction that the failure to reach the heart of this controversy, the employment status of Becker, could result in a strike. Although such a result is conceivable, we refuse to indulge in such speculation; however, we must agree that the failure to get at the heart of this controversy would leave festering an unsettled dispute between labor and management.

By its contract, the company has agreed to settle its differences in the joint committee. The company has twice been granted relief by the W. E. R. B. from a joint committee order denying it due process. We do not see how it

can now lawfully choose to spurn the W. E. R. B., and deny to the public and the employee the fair hearing that it sought for itself. The public, as well as the parties, has a right to a final determination of this controversy; and the public, having provided the means in an administrative tribunal to protect the rights of all concerned, should, at least in this case where the powers of the W. E. R. B. have been invoked, not be expected to stand aside to its detriment while the parties do battle.

The company came to the W. E. R. B. claiming that it had been dealt with unfairly. The W. E. R. B. found, and we agree with its decision, that the company was denied due process. It was the duty of the W. E. R. B. not only to see to it that the company received a fair hearing, but that all interests were accorded justice. While relieving the company of the onus of an unfair order may have satisfied the constitutional requirements as to the company, the statute demands more:

"It is the policy of the state to protect and promote each of these interests with due regard to the situation and to the rights of the others." Sec. 111.01 (1), Stats.

The entire history of the interpretation of ch. 111 has been in accord with this policy determination. A typical statement of this court is found in *Dunphy Boat Corp. v. Wisconsin Employment Relations Board* (1954), 267 Wis. 316, 323, 64 N. W. (2d) 866:

"Ch. 111, Stats., should be liberally construed to secure the objectives stated in the declaration of policy set forth in sec. 111.01."

We also have said:

"In dealing with this matter of labor disputes the legislature has recognized a public interest in the relation between employer and employee. It grows out of the employment and the operation of the industry of the employer. The enact-

ments in relation thereto do not destroy nor are they calculated to invade contract rights, but they do seek to protect the public against unfair labor practices and to foster the continuance of that relation in which the public is interested." *Appleton Chair Corp. v. United Brotherhood* (1941), 239 Wis. 337, 342, 1 N. W. (2d) 188.

We can only conclude that the W. E. R. B. properly and within its jurisdiction ordered that the discharge grievance be resubmitted for hearing and final disposition to the joint committee. We cannot see that the company is aggrieved at this order. It is being accorded the due process that it seeks, and we see no cause for its complaint now.

The company objects to being returned for a third time to a tribunal that has treated it unfairly twice. This is true, and the W. E. R. B. has so found, but what the company forgets is that the order to return to the joint committee is not merely for its benefit; it is in addition, and perhaps most importantly, for the vindication of a public right in a particular controversy in which the legislature by its policy statement has declared that the public at large has a vital interest. The company having insisted upon the principles of due process cannot now abandon them and leave the fundamental controversy with which the public is concerned unresolved.

The company raises another issue under these facts. On the company's motion, the circuit court issued an order to show cause why the W. E. R. B.'s order should not be stayed pending the company's petition for review. The court also temporarily restrained the union from resubmitting the Arnold Becker grievance to the joint committee. The matter was not heard because the union agreed by a letter to the company not to resubmit the grievance.

In the order denying review, the circuit court vacated the above order. We quite agree. The order is moot.

*By the Court.*—Judgment affirmed.